**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ILIE SITARIU,**

                             **Plaintiff,**

  vs.                                              1:18-CV-600
                                                           (MAD/DJS)

**TEJINDER BAINS and THE LAW OFFICES OF**
**ALI AND BAINS, P.C.**

                             **Defendants.**

---

**APPEARANCES:**                                     **OF COUNSEL:**

**ILIE SITARIU**
22162-052
Moshannon Valley Correctional Facility
555 GEO Drive
Philipsburg, Pennsylvania 16866
Plaintiff *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff brings this action against his former criminal defense counsel, Tejinder Bains, and Bains's legal practice, the Law Offices of Ali and Bains, P.C., alleging breach of contract, fraud, breach of fiduciary duty, and legal malpractice claims. *See* Dkt. No. 10 at 1. Plaintiff filed his initial Complaint on May 21, 2018 against Defendant Bains. *See* Dkt. No. 1 at 1. On July 13, 2018, Magistrate Judge Stewart conducted an initial review and recommended that the Complaint be dismissed without prejudice because Plaintiff failed to adequately allege diversity jurisdiction. *See* Dkt. No. 9 at 9. On August 10, 2018, the Court adopted Magistrate Judge Stewart's recommendation in its entirety and dismissed the Complaint with leave to amend. *See* Dkt. No. 10 at 5.

Plaintiff filed a Second Amended Complaint on September 14, 2018, this time adding the Law Offices of Ali and Bains, P.C. to the action. *See* Dkt. No. 11. Magistrate Judge Stewart reviewed the Second Amended Complaint and again recommended that the Complaint be dismissed because Plaintiff did not allege Defendant Bains's domicile. *See* Dkt. No. 12 at 3. Before this Court could issue a decision, Plaintiff filed a Third Amended Complaint, alleging that Defendant Bains is domiciled in Old Westbury, New York.[1] *See* Dkt. No. 13 at ¶ 2.

Plaintiff's Third Amended Complaint is presently before the Court and, for the following reasons, is *sua sponte* dismissed for lack of diversity jurisdiction.

## II. DISCUSSION

### A. Legal Standard

In reviewing a *pro se* complaint, the Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Rule 15 of the Federal Rules of Civil Procedure provides that after a party amends his pleading once as a matter of right, the party may amend his pleading again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. Plaintiff did not seek Defendants' written consent or leave of the Court to file his Third Amended Complaint. Nevertheless, in light of Magistrate Judge Stewart's recommendation to grant Plaintiff leave to amend and Plaintiff's *pro se* status, the Court accepts the Third Amended Complaint as the operative pleading. *See* Dkt. No. 12 at 3.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will be dismissed. *Id.* (internal quotation marks and alterations omitted).

**B.     Diversity Jurisdiction**

Plaintiff alleges that, pursuant to 28 U.S.C. § 1332, the Court has diversity jurisdiction over this matter. *See* Dkt. No. 13 at ¶¶ 1-3. To properly allege diversity jurisdiction, Plaintiff must allege (1) diversity of citizenship between the parties and (2) an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a).

*1. Diversity of Citizenship*

For diversity jurisdiction purposes, an individual's citizenship is his domicile, which is determined based on: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan*, No. 98-CV-3176, 1999 WL 38256, *2 (S.D.N.Y. Jan. 28, 1999) (quoting 15 James Wm. Moore et al., Moore's Federal Practice ¶ 102.34[2] (3d ed. 1998)). "[A] law firm taking the form of a professional corporation is a citizen of the state of incorporation and of the state where it has its principal place of business." *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, No. 05-CV-10098, 2006 WL 2850210, *2 (S.D.N.Y. Oct. 4, 2006) (citing *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983)); *see also* 28 U.S.C. § 1332(c) (providing that a corporation is "a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business").

3

Here, the Third Amended Complaint adequately alleges diversity of citizenship between the parties. Plaintiff, a citizen of Romania, alleges that he was vacationing in New York prior to his arrest, and although he is currently incarcerated in Pennsylvania, he will be deported to Romania upon his release from prison. *See* Dkt. No. 13 at ¶ 1. Therefore, Plaintiff's domicile is Romania. *See Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253-54 (E.D.N.Y. 2004) (noting that there is a rebuttable presumption that prison inmates retain their pre-incarceration domicile). As for Defendants, the Third Amended Complaint alleges that Bains resides in Old Westbury, New York, and the law firm is a professional corporation that is incorporated in New York and has its principal place of business in Queens, New York. *See* Dkt. No. 13 at ¶¶ 2, 3. Therefore, Plaintiff has properly alleged that Defendants are each citizens of New York. *See Zimak*, 1999 WL 38256, at *2; *Todtman, Nachamie, Spizz & Johns*, 2006 WL 2850210, at *2. Accordingly, the Court finds that there is complete diversity of citizenship between the parties.

### 2. *Amount in Controversy*

In order to properly allege diversity jurisdiction under Section 1332, the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). Here, Plaintiff seeks $31,500 in "compensatory, actual damages, and direct damages," and $100,000 in punitive damages. *See* Dkt. No. 13 at ¶¶ 4-5. As this Court previously explained, "'punitive damages can be considered in determining whether the jurisdictional amount in controversy has been satisfied if punitive damages are allowed under the controlling law.'" *See* Dkt. No. 10 at 4 (quoting *Bindrum v. American Home Assurance Co. Inc.*, 441 Fed. Appx. 780, 782 (2d Cir. 2011)).

Liberally construing the Third Amended Complaint, Plaintiff has alleged breach of contract, fraud, breach of fiduciary duty, and legal malpractice claims. Therefore, punitive

4

damages will be considered as part of the jurisdictional amount in controversy only if they are permitted for at least one of those claims.

### *a. Breach of Contract*

Under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the United States*, 83 N.Y.2d 603, 613 (1994) (citation omitted). However, in *Walker v. Sheldon*, 10 N.Y.2d 401 (1961), the New York Court of Appeals held that a plaintiff could recover punitive damages in a breach of contract claim where the defendant's conduct was "aimed at the public generally" and "evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations." *Walker*, 10 N.Y.2d at 404-05. There are four pleading elements necessary to state a claim for punitive damages when the claim arises from a breach of contract: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in [*Walker*]; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995) (citations omitted); *see also Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (collecting cases).

Plaintiff argues that he satisfies the first *Walker* element by alleging that Defendants fraudulently induced him to enter into a plea agreement in his criminal case. *See* Dkt. No. 13 at ¶ 5. Next, Plaintiff argues that "there is sufficient moral culpability and the Defendants egregious conduct also constitutes a public wrong and a public right should be vindicated." *See id.* at ¶¶ 6, 10. Finally, Plaintiff claims that Defendants were "indifferent to the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration

of justice" because they intended to defraud Plaintiff and were "indifferent to their civil obligations" to effectively represent Plaintiff. *See id.* at ¶¶ 7, 10.

Despite Plaintiff's assertions that Defendants' conduct harmed the public's interest, this case involves a private contract dispute about a fee arrangement. *See id.* at ¶ 13 (alleging that the parties verbally agreed on a fee for Defendants' services in their initial meeting), *id.* at ¶¶ 17-18, 22 (alleging that the parties exchanged letters reflecting a disagreement over the fees owed to Defendants). Nothing in the Third Amended Complaint suggests that Defendants engaged in similar conduct with other clients, or that Defendants' alleged breach "targets the public." *See Morris v. Flaig*, 511 F. Supp. 2d 282, 296 (E.D.N.Y. 2007) (holding that "punitive damages should only be available where they are necessary to vindicate public rights," which generally only occurs when "the alleged breach of contract targets the public" (internal quotation marks omitted)). Therefore, Plaintiff has not alleged that Defendants' conduct was "part of a pattern directed at the public generally." *See New York University*, 87 N.Y.2d at 316. Since no greater public interest will be served by punishing Defendants, Plaintiff is not entitled to punitive damages for his breach of contract claim. *See SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, No. 12-CV-7280, 2013 WL 5366373, *21 (S.D.N.Y. Sept. 25, 2013) (finding that no greater public interest is served by punishing defendants in a "private action with the sole purpose of recovering debts owed").

The Third Amended Complaint alleges that Defendants "opted to force or intimidate Plaintiff's family" to obtain additional payments. *See* Dkt. No. 13 at ¶ 33. To the extent that Plaintiff is arguing that such intimidation targets the public, the Court disagrees. Any alleged intimidation was done to enforce a single private contract - the retainer agreement. Plaintiff does not allege that Defendants intimidated other clients, so he is not entitled to an award of punitive

6

damages. *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 94 (2d Cir. 2005) (denying punitive damages where the harm was an isolated incident that was not aimed at the public generally, although the public suffered some "incidental effects"); *SungChang Interfashion*, 2013 WL 5366373, at *22 (finding that a private action with the sole purpose of recovering debts owed to a creditor did not target the public); *Ventus Networks, LLC v. Answerthink, Inc.*, No. 05-CV-10316, 2007 WL 582736, *3 (S.D.N.Y. Feb. 22, 2007) (denying punitive damages where the fraud was "an isolated transaction incident to an otherwise legitimate business" (citing *Walker*, 10 N.Y.2d at 406) (internal quotation marks omitted)).

Additionally, the Third Amended Complaint fails on the second *Walker* element, because Defendants' alleged conduct does not "evince[] a high degree of moral turpitude and demonstrate[] such wanton dishonesty as to imply a criminal indifference to civil obligations." *See Walker*, 10 N.Y.2d at 405. Although Plaintiff makes naked, conclusory assertions that Defendants' "fraudulent conduct was sufficiently egregious and morally culpable," he does not allege facts that allow the Court to draw the same conclusion. *See* Dkt. No. 13 at ¶ 6. For example, Plaintiff alleges that Defendants misrepresented the sentencing possibilities in his criminal matter to extract more money from his family. *See id.* at ¶ 22. In fact, in a letter from Defendants dated March 23, 2016, Defendants properly outlined the sentencing possibilities in Plaintiff's case and posited that Plaintiff may be able to plead to a lower prison term. *See id.* at 17-19. Thus, the claim that Defendants misrepresented the sentencing possibilities is entirely without merit. *See Walker*, 10 N.Y.2d at 405. As such, the Court finds that Plaintiff has not properly pleaded his assertion that Defendants were criminally indifferent to their obligation to effectively represent him, and is not entitled to the "extraordinary remedy" of punitive damages. *See Rocanova*, 83 N.Y.2d at 613.

### *b. Fraud*

"Under New York law, punitive damages are appropriate in a fraud action when the proof establishes 'gross, wanton, or willful fraud or other morally culpable conduct.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 927 F. Supp. 650, 664 (S.D.N.Y. 1996), *aff'd sub nom.*, 119 F.3d 91 (2d Cir. 1997) (quoting *Borkowski v. Borkowski*, 39 N.Y.2d 982, 983 (1976)). While all fraud contains some elements of gross, wanton, or willful conduct, punitive damages should not be awarded in every case in which fraud is found. *Id.* "[W]hether a party's conduct crosses the line from mere fraud to morally culpable conduct deserving of punishment turns 'on a considered observation of the defendant's conduct in light of the ordinary morals of the marketplace and on an assessment of whether the punishment is needed and will be effective as a deterrent.'" *Id.* at 665 (*quoting Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118-19 (2d Cir. 1986)). Therefore, punitive damages should only be awarded when a party's conduct "is sufficiently willful and egregious to indicate a need for something more than compensatory relief." *Whitney*, 782 F.2d at 1118.

Plaintiff alleges that Defendants fraudulently induced him, "based on false representation," to enter into a plea agreement in his criminal case. *See* Dkt. No. 13 at ¶ 5. However, Plaintiff does not allege any facts to support this conclusory statement. Moreover, although Bains originally represented Plaintiff in his criminal matter, Bains did not represent him on December 28, 2016, when Plaintiff pleaded guilty. *See* Dkt. No. 15, *United States v. Sitariu*, 1:16-CR-265 (May 23, 2016) (appointing a federal public defender on May 23, 2016 after Plaintiff requested new counsel); Dkt. No. 30 at 1, *United States v. Sitariu*, 1:16-CR-265 (Dec. 28, 2016) (indicating on the guilty plea that Gene Primomo represented Plaintiff). Therefore, Plaintiff's claim that Bains fraudulently induced him to enter a plea agreement is unavailing.

8

Additionally, Plaintiff alleges that Defendants fraudulently induced him to enter into a contractual agreement with them, fraudulently misrepresented the cost of their services, and fraudulently concealed the fact that they used some of his retainer fee to cover legal costs for a third party. *See* Dkt. No. 13 at ¶¶ 5, 38-40. First, nothing in the Third Amended Complaint suggests that Plaintiff was fraudulently induced to enter into a contractual agreement with Defendants. *See id.* at ¶¶ 13-14 (alleging that Bains visited Plaintiff in the county jail and the parties verbally agreed that Bains would represent Plaintiff). Second, disagreement over legal fees is a contract dispute, and the facts alleged do not show any fraudulent inducement, misrepresentation, or concealment by Defendants. Finally, although Plaintiff claims that his retainer payments were "paid to a third party who is no mentioned [sic] herein the retainer agreement," *see* Dkt. No. 13 at ¶ 25, Defendants informed Plaintiff in the March 23, 2016 letter that after they were paid $7,500 by Plaintiff's friend, the friend asked that the payment partially pay for Plaintiff's representation and partially pay for another matter.[2] *See id.* at 17.

Therefore, despite Plaintiff's broad assertions, the Third Amended Complaint does not indicate that Defendants perpetrated gross, wanton, or willful fraud or other morally culpable conduct, which would demonstrate a need to impose punitive damages. *See Schlaifer Nance & Co.*, 927 F. Supp. at 664. Because Plaintiff does not allege any facts to suggest moral culpability, he may not allege punitive damages for his fraud claim.

### c. Legal Malpractice

---

[2] Plaintiff claims that he was "accorded fees" of $7,500 that were "paid to a third party who is no mentioned [sic] herein the retainer agreement." *See* Dkt. No. 13 at ¶ 25. The March 23 letter, however, explains that Plaintiff's friend paid $7,500 to Defendants, but only $4,500 went towards Plaintiff's matter and $3,000 was allotted towards a different matter that Plaintiff's friend wanted Defendants to work on. *See id.* at 17.

New York law allows a plaintiff to obtain punitive damages in legal malpractice actions "'where the wrong involves some violation of duty springing from a relation of trust or confidence,' and 'the defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree.'" *Flycell, Inc. v. Schlossberg LLC*, No. 11-CV-0915, 2011 WL 5130159, *10 (S.D.N.Y. Oct. 28, 2011) (citing *Green v. Leibowitz*, 500 N.Y.S.2d 146 (App. Div. 1986) and *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 371 (2d Cir. 1988)) (other citations and internal quotation marks omitted). As discussed *supra*, the facts alleged in the Third Amended Complaint do not suggest gross, wanton, or willful fraud or other morally culpable conduct. Therefore, Plaintiff is not entitled to punitive damages on his legal malpractice claim.

### d. Breach of Fiduciary Duty

"Under New York law, where a claim for [breach of] fiduciary duty is 'premised on the same facts and seeking the identical relief' as a claim for legal malpractice, the claim for fiduciary duty 'is redundant and should be dismissed.'" *Nordwind v. Rowland*, No. 04-CV-9725, 2007 WL 2962350, *4 (S.D.N.Y. Oct. 10, 2007), *aff'd*, 584 F.3d 420 (2d Cir. 2009) (citing *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (App. Div. 2004)) (other citations omitted). Here, the breach of fiduciary duty claim relies on the same alleged misrepresentations about the fee arrangement and is seeking the same relief as the legal malpractice claim. *See* Dkt. No. 13 at ¶¶ 41, 42. As such, Plaintiff's breach of fiduciary duty must be dismissed as duplicative.[3] *See Nordwind*, 2007 WL 2962350, at *4.

---

[3] Further, punitive damages are only available for breach of fiduciary duty claims where the defendant exhibits a very high degree of moral culpability. *See Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 409 (S.D.N.Y. 2000) (citing *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (1988)) (other citations omitted). As discussed herein, the facts alleged in the Third Amended Complaint do not

(continued...)

Since none of the causes of action may support a claim for punitive damages, the amount in controversy in this case is $31,500. As such, Section 1332's amount in controversy requirement has not been met, and the Court does not have diversity jurisdiction over this case. Accordingly, the Court must dismiss the case for lack of subject matter jurisdiction.

**B.    Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment is futile when the proposed amended complaint could not withstand a motion to dismiss, such as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)." *Griffith-Fenton v. Coldwell Banker Mortg.*, No. 13-CV-7449, 2014 WL 6642715, *1 (S.D.N.Y. Oct. 17, 2014) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)) (other citation omitted).

As discussed herein, punitive damages are not allowed in this action, and Plaintiff's actual damages fail to meet the amount in controversy required for a federal court to exercise diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Because better pleading will not cure this deficiency, amendment would be futile. Therefore, the Court dismisses the Third Amended Complaint without leave to amend.

---

[3](...continued)
suggest that Defendants acted with a high degree of moral culpability. Thus, even if this claim had survived the Court's initial review, it was unlikely to support a claim for punitive damages.

11

Moreover, since the initiation of this action on May 21, 2018, Plaintiff has had three opportunities to properly plead this Court's jurisdiction, but he has failed to do so every time. *See Foman*, 371 U.S. at 182 (citing "repeated failure to cure deficiencies by amendments previously allowed" as a reason to deny leave to amend). Thus, even if the Court granted Plaintiff leave to amend, such a pleading would likely "be doomed to failure." *See In re Gildan Activewear, Inc. Sec. Litig.*, No. 08-CV-5048, 2009 WL 4544287, *5 (S.D.N.Y. Dec. 4, 2009) (finding that where a plaintiff had two prior opportunities to amend his complaint, a third motion for leave to amend was unlikely to succeed); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (denying leave to amend where "[d]espite getting two previous opportunities to amend . . . , plaintiffs seek yet another bite at the proverbial apple"). Plaintiff is not "entitled to an advisory opinion from the Court informing [him] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Id.* (citation and internal quotation marks omitted). Therefore, the Third Amended Complaint is dismissed without leave to amend.[4]

### III. CONCLUSION

After careful review of the Third Amended Complaint and the applicable law, the Court hereby

**ORDERS** that Plaintiff's Third Amended Complaint (Dkt. No. 13) is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

---

[4] The Court agrees entirely with the October 11, 2018 Report-Recommendation and Order. *See* Dkt. No. 12. However, because Plaintiff filed the Third Amended Complaint, those recommendations are now moot.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 9, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge